1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WENDY L. SEAMAN,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:15-cv-5184-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of the defendant Commissioner's

denial of her applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI").  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local

Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate

Judge.  After reviewing the parties' briefs and the remaining record, the Court hereby finds that

for the reasons set forth below, the Commissioner's decision to deny benefits is affirmed.

FACTUAL AND PROCEDURAL HISTORY

On January 20, 2012, plaintiff protectively filed applications for DIB and SSI, alleging

disability as of August 31, 2009, due to chronic back pain, left knee problems, and depression.

See Administrative Record ("AR") 22, 80.   Her applications were denied upon initial

administrative review and on reconsideration. See AR 88, 98, 112, 123.  A hearing was held

before an administrative law judge ("ALJ") on October 21, 2013, at which plaintiff, represented

by counsel, appeared and testified, as did a vocational expert. See AR 41-78.

ORDER - 1

On November 27, 2013, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 22-35.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 25, 2015, making the ALJ's decision the Commissioner's final decision. See AR 5-9; see also 20 C.F.R. § 404.981, § 416.1481.   On March 30, 2015, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on June 5, 2015. See ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for award of benefits, because the ALJ erred by: (1) improperly rejecting the medical opinions from Robert Arnsdorf, M.D. and Erum Khaleeq, M.D., and (2) discounting plaintiff's credibility.  For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that the Commissioner's decision should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." (citing Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1987))).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

ORDER - 2

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("'Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.'" (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971))). [1]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Comm'r of Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

1   F.3d 1144, 1149 (9th Cir. 2001).  Here, plaintiff assigns error to the ALJ's evaluation of medical

2   assessments from treating physician Robert Arnsdorf, M.D. and psychiatric consultant Erum

3   Khaleeq, M.D.

4       *A. Robert Arnsdorf, M.D.*

5       Dr. Arnsdorf began seeing plaintiff as his patient on June 21, 2006.  AR 413.  On October

6   22, 2012 he provided an assessment of plaintiff's impairments and functional capacity.  AR 413-

7   20.  He described her primary symptoms as chronic back and left leg pain.  AR 414.  He gave a

8   prognosis of "chronic pain" and "should improve."  AR 413.  Dr. Arnsdorf rated plaintiff's pain

9   as moderate to moderately severe and concluded that the pain was not completely controlled with

10  medication.  AR 415.  He estimated that plaintiff could sit for four hours and stand for four hours

11  in a normal competitive work environment.  AR 415.  She could lift/carry up to five pounds

12  frequently and up to ten pounds occasionally.  AR 416.  She should be limited to pushing and

13  pulling ten pounds or less and very little kneeling or stooping.  AR 419.  Dr. Arnsdorf opined

14  that plaintiff must get up and move around every hour, and could sit again after thirty minutes.

15  AR 415-16.  Plaintiff would need ready access to a restroom and several unscheduled twenty

16  minute breaks throughout the day.  AR 418-19.

17      The ALJ adopted this opinion in part, "because only some of his opinions are consistent

18  with the objective medical records." AR 32.  In particular, the ALJ found Dr. Arnsdorf's opinion

19  concerning plaintiff's ability to sit, stand, walk, lift/carry, handle workplace stress, and need to

20  change positions to be generally consistent with the imaging and medical record as a whole.  AR

21  32.  However, the ALJ determined that Dr. Arnsdorf's assessment of plaintiff's ability to push,

22  pull, kneel, stoop, perform repetitive work, and need to have ready access to the restroom and

ORDER - 5

take unscheduled twenty minute breaks was not consistent with the medical evidence or plaintiff's activities.  AR 32.

Plaintiff alleges the ALJ failed to incorporate several restrictions despite finding them consistent with the record and erroneously rejected other restrictions.  Dkt. 10 at 5-6. The ALJ did not include plaintiff's need to get up and move every hour then return to sitting again after thirty minutes or have ready access to the restroom. AR 27, 415-416, 419. By adopting an RFC of light work, the ALJ rejected Dr. Arnsdorf's opinion that plaintiff could lift only five pounds frequently and ten pounds occasionally. AR 27, 416.  See 20 C.F.R. 404.1567(b).  Also, the ALJ rejected Dr. Arnsdorf's need to take several unscheduled twenty minute breaks. AR 27, 418. Plaintiff claims the ALJ erred by failing to incorporate all of these limitations into the RFC. Dkt. 10 at 5-6.

Plaintiff contends that the ALJ did not adequately address her need to move around for thirty minutes every hour before being able to sit again. Dkt. 10 at 5.  However, the ALJ included a specific sit/stand limitation in the RFC to address her need to change positions.  "She needs to alternate between sitting and standing every 30 minutes, but can remain productive at the workstation."  AR 27.  Dr. Arnsdorf did not specify details as to how plaintiff needed to get up and move around for thirty minutes. He merely indicated plaintiff must get up and move around every hour and could sit again after thirty minutes. AR 415-16.   Here, the ALJ's interpretation of this requirement as satisfied by the movement afforded by alternating between sitting and standing every thirty minutes is reasonable. The final responsibility for deciding issues such as an individual's RFC is reserved to the Commissioner.  Social Security Ruling (SSR) 96-5P.   While this interpretation may not be the one favored by plaintiff, it is rational and must be upheld. See Thomas, 278 F.3d at 954;  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

1   2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

2   conclusion that must be upheld.").

3           According to plaintiff, the ALJ erroneously determined that plaintiff could perform light

4   work. Dkt. 10 at 5-6. Light work includes lifting up to twenty pounds and frequent

5   lifting/carrying up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.957(b). This conflicts with the

6   Dr. Arnsdorf's lift/carry restrictions of no more than ten pounds occasionally and five pounds

7   frequently "adopted" by the ALJ. AR 32. However, the error is harmless. See Molina v.

8   Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless when inconsequential to the

9   ultimate non-disability determination). The ALJ found plaintiff capable of performing two

10  sedentary jobs, which involve "lifting no more than 10 pounds at a time and occasionally lifting

11  or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a),

12  416.957(a). Thus, the jobs ultimately cited in the step five analysis adhere to Dr. Arnsdorf's

13  lift/carry restrictions. The RFC limitation to light work was inconsequential to the non-disability

14  determination. Molina, 674 F.3d at 1115.

15          Plaintiff also argues the ALJ erred by failing to adopt Dr. Arnsdorf's opinion that she

16  would need to take several unscheduled twenty minute breaks throughout the day. Dkt. 10 at 6.

17  The ALJ found that the unscheduled twenty minute breaks are not consistent with plaintiff's

18  daily activities of cleaning, shopping, and preparing meals. AR 32. Plaintiff points to evidence

19  that she cannot stand long or cook a full meal without pain, she walks slowly or uses an electric

20  cart when she does her minimal shopping, and she sits to perform household chores like dusting,

21  mopping, and vacuuming. Dkt. 10 at 6. AR 250-51. However, she also reported that she could

22  cook for forty five minutes to an hour, do housework for approximately two hours, and shop for

23  one to two hours as needed. AR 250. She often sits to accomplish her activities. AR 250. She

ORDER - 7

sits for thirty minutes and stands for ten to twenty minutes. AR 58-59. Plaintiff's own descriptions of these daily activities suggest she is capable of accomplishing them by alternating between sitting and standing as described in the RFC. Dr. Arnsdorf's requirement of unscheduled twenty minute breaks beyond the sit/stand option is inconsistent with plaintiff's performance of her activities. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

Dr. Arnsdorf's opinion also includes no information or clinical findings supporting a need for unexpected breaks. Similarly, the record contains no medical evidence to support the requirement of ready access to the bathroom. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Thus, the ALJ's decision to omit these restrictions from the RFC was not error.

*B. Erum Khaleeq, M.D.*

Dr. Erum Khaleeq evaluated plaintiff in April 2012 and diagnosed depression due to a known medical condition, with a limited prognosis because her depression seemed "to be stemming from her inability to stay in the workforce due to chronic pain." AR 289. At that time, plaintiff's mental status exam was generally normal, except for impaired performance on serial 3's. AR 289. Dr. Khaleeq opined that plaintiff could perform simple tasks but "may get distracted with repetitive tasking." AR 290. Additionally, she may experience frustrations interacting with coworkers and the public, have difficulty performing work activities on a consistent basis, and difficulty maintaining attendance and completing a normal workday/week without interruptions due to inability to stay focused and loss of interest. AR 290. Finally, the usual stress in the workplace would further aggravate her psychiatric condition. AR 290.

1    The ALJ gave little weight to Dr. Khaleeq's opinion because "he did not take into

2   account the claimant's abilities if she enrolled in mental health counseling, and took medication

3   for her mental symptoms."  AR 31.  Additionally, the ALJ found that Dr. Khaleeq's assessment

4   was not consistent with the medical records as a whole or plaintiff's activities.  AR 31-32.

5   Plaintiff contends that these reasons are not adequate to reject this medical opinion.  Dkt. 10 at 9-

6   11.

7        The ALJ's rejection of Dr. Khaleeq's psychological assessment based on his failure to

8   consider her functionality if treated was unfounded.  While plaintiff had no mental health

9   treatment, the record contains no evidence that her mental impairments would improve with

10  treatment.  Furthermore, Dr. Khaleeq noted plaintiff's depression likely stemmed from her

11  inability to work due to chronic pain.  AR 289.  He concluded, "[t]he likelihood of recovery in

12  the next 12 months is limited." AR 289. Based on this opinion, plaintiff's depression is related to

13  her chronic pain and unlikely to resolve easily. The ALJ appears to have expected Dr. Khaleeq to

14  engage in pure speculation as to plaintiff's potential capacity after treatment. This is an

15  unreasonable expectation and cannot serve as a legitimate basis for rejecting a clinically

16  supported medical opinion.

17       Despite this inappropriate reasoning, the ALJ did not err in the rejection of  Dr.

18  Khaleeq's opinion.  The ALJ correctly noted the record contained little medical evidence

19  consistent with the severity of the assessment and limitations.  Inconsistency with the medical

20  record is a specific and legitimate reason to reject a medical opinion.  See Tommsetti v. Astrue,

21  533 F.3d 1035, 1041 (9th Cir. 2008); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

22  Here, the medical records referenced a history of depression but showed little objective evidence

23  of depression or other mental health symptoms.  See AR 303, 314, 323, 331, 396. Medical

ORDER - 9

records mentioning mental health symptoms are sparse.  During an appointment with Dr.

Arnsdorf on August 2, 2011 the review of symptoms was notable for depression, but plaintiff

"does not complete her depression scale today correctly." AR 360.  When Dr. Arnsdorf

completed his October 22, 2012 assessment, he opined that plaintiff had emotional factors

contributing to the severity of limitations because she was "frustrated due to pain."  AR  418.

However, at a February 8, 2013 appointment Dr. Arnsdorf reported that plaintiff was "in good

spirits."  AR 423.

Overall, the medical record reflects few complaints of mental health symptoms.  Other

than plaintiff's testimony and Dr. Khaleeq's opinion, the evidence does not support the

significant functional limitations assessed by Dr. Khaleeq.  This inconsistency with the medical

record as a whole is a specific and legitimate reason to reject Dr. Khaleeq's opinion.  See,

Tommsetti, 533 F.3d at 1041.   The ALJ did not err by giving little weight to the assessment.

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

ORDER - 10

1    Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

2    claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

3    and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

4    malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

5           In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

6    credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

7    symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

8    1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

9    physicians and other third parties regarding the nature, onset, duration, and frequency of

10   symptoms. See id.

11          The ALJ found plaintiff's complaints less than credible for several reasons: (1) the

12   medical record did not support the severity of her alleged impairments; (2) her last job ended for

13   reasons unrelated to her impairments; (3) her activities of daily living are not consistent with the

14   alleged severity of her impairments; (4) she had not put forth effort to improve her health,

15   particularly her mental health; and (5) her poor work record suggested that she had not put forth

16   a good faith effort.  AR 28, 33.  Plaintiff contends that these reasons do not support the rejection

17   of her testimony.

18          The ALJ properly found that plaintiff's allegations of disabling mental health

19   impairments were unsupported by the medical record.  "While subjective pain testimony cannot

20   be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

21   medical evidence is still a relevant factor in determining the severity of the claimant's pain and

22   its disabling effects." Rollins, 261 F.3d at 857.  This includes circumstances where a lack of

23   medical evidence undermines allegations of disabling impairments.  "According to agency rules,

'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.'" Molina, 674 F.3d at 1113.  As noted above, the severity of plaintiff's alleged depression is not reflected in the medical record. Aside from Dr. Khaleeq's evaluation and occasional references to depression as a historical diagnosis, the record includes few complaints pertaining to plaintiff's mental health and is devoid of any evidence of psychiatric treatment.  Plaintiff testified that she had never taken psychotropic medication or engaged in therapy.  AR 56-57.  Given the paucity of mental health complaints in the medical record, "it was reasonable for the ALJ to conclude that the 'level or frequency of treatment [was] inconsistent with the level of complaints.'" Id. (quoting SSR 96–7p).

Additionally, the ALJ cited plaintiff's lack of effort to seek treatment for her allegedly disabling mental impairments.  "[A]n unexplained, or inadequately explained, failure to seek treatment" weighs against credibility. Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989). Plaintiff points to the Ninth Circuit philosophy that, "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).  However, there is no evidence that plaintiff's lack of mental health treatment was attributable to her mental impairments rather than her own preference. See Molina, 674 F.3d at 1114.   This unexplained lack of mental health treatment is also a specific and legitimate reason to reject plaintiff's testimony.

Plaintiff's work history also supports the ALJ's credibility determination. An extremely poor work history can affect credibility concerning the inability to work. See Thomas, 278 F.3d at 959.  Here, plaintiff's earnings record shows several years of unemployment or income below substantial gainful activity. AR 227.  This sparse employment record properly raised doubts about plaintiff's motivation to seek benefits. AR 33.

ORDER - 12

While multiple reasons support the ALJ's credibility determination, plaintiff is correct that her activities of daily living are not inconsistent with her alleged level of disability. The ALJ relied on plaintiff's ability to perform her activities of daily living including cooking meals that take up to an hour to prepare, do the laundry, perform two hours of housework, and shop for up to two hours. AR 33. "Daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" Orn v. Mastrue, 495 F.3d 625, 639 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (Cir. 9th 1989)).  Daily activities may also have bearing on credibility if they are inconsistent with claimed limitations. Reddick, 157 F.3d at 722.  Here, plaintiff contends her activities are performed with significant limitations, are not transferable to a work environment and do not consume a substantial part of her day. Dkt. 10 at 14-15.

The ALJ found plaintiff's activities of daily living "are not consistent with the severity of her alleged limitations." AR 33. But, plaintiff's description of her ability to complete chores and shop is consistent with her alleged limitations.  Plaintiff testified she could sit for thirty minutes and stand for ten to twenty minutes.  AR 58-59.  She could perform housework with breaks and accommodations, like sitting to dust, mop and vacuum. AR 250. Similarly, she walks slowly or uses a cart for shopping. AR 250-51. Plaintiff can perform various activities of daily living because she has modified them to accommodate her impairments. Therefore, the ALJ's finding that plaintiff's activities of daily living are inconsistent with the severity of her alleged limitations is not based on substantial evidence.

The ALJ also erroneously used plaintiff's termination from her prior employment to discredit her testimony. AR 29, 33. The fact that a claimant stopped work due to reasons other

ORDER - 13

than her impairment can be a basis to disregard testimony. See Bruno v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Here, plaintiff's babysitting job ended when the children started school, which is clearly a reason other than her impairment. AR 233.  However, plaintiff noted that she was having difficulties with physical aspects of the job prior to its conclusion. AR 233.  While not the reason for her termination, plaintiff's impairments pre-dated the end of her job and impacted her ability to work.  Therefore, the ALJ's reliance on plaintiff's release from her prior job was not a legitimate reason to discount her testimony.

While the ALJ did err with respect to these bases for discounting plaintiff's testimony, the majority of the reasoning was proper. In particular, plaintiff's extremely sparse mental health records and complete lack of treatment for the impairment are inconsistent with her allegedly disabling depression.  As a result, substantial evidence supports the ALJ's credibility determination.  The ALJ's credibility determination is affirmed.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 24th day of February, 2016.


Karen L. Strombom
United States Magistrate Judge

ORDER - 14